Beverly BELL, et vir, Appellants,

v.

Charles H. HOSKINS, Jr., et al., Appellees.

No. 16008.

Court of Civil Appeals of Texas.

Dallas.

May 4, 1962.

Fowler Roberts, Dallas, for appellants.

Golden, Croley, Howell, Johnson & Mizell and Bradford D. Corrigan, Jr., Dallas, for appellees.

WILLIAMS, Justice.

While this suit in the lower court was denominated a habeas corpus action it was, in reality, an application for change of custody of two minor children. Beverly Bell (formerly Beverly Hoskins) the natural mother of the two minor children involved, joined by her present husband, instituted this action against Robert G. Hoskins, the natural father of the children, and Charles H. Hoskins, Jr., and his wife Betty Hoskins, alleging a change of condition since the original decree of divorce in the State of Illinois, and asking that custody of the minor children be awarded to her. The Juvenile Judge of Dallas County rendered judgment denying change of custody but granting to Beverly Bell visitation privileges. From that judgment appellants appeal, contending in three points of error (1) that the trial court erred in awarding custody of the two minor children to the father when it has been shown that the mother is a proper and suitable person and, other things being equal, she was entitled to such custody as a matter of law; (2) that the mother was a proper and suitable person to have such custody and was able to provide the children a home equal to or better than that which the father could provide; and (3) that the trial court erred in excluding certain testimony concerning why appellant failed to visit her children.

At the outset it is important to observe that this is not a suit for a first award of custody but is one to change custody following an original award of custody by a court of a sister State. The difference between a first award of custody and a change of custody becomes important in determining what legal principles should determine the court's decision. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 790; Clark v. Chrietzberg, (Civ.App.) 348 S.W.2d 476.

We are now presented with a decree denying the application of change of custody which carries with it implied findings by the Juvenile Judge that there had been no change of conditions which would justify the allegations made by the mother. It is to be presumed that the trial court endeavored to award the children to the person best fitted to care for them, and his judgment must be construed fairly in an effort to harmonize it with the facts and the law. Haynes v. Haynes, (Civ.App.) 191 S.W.2d 81; Sawyer v. Bezner, (Civ.App.) 204 S.W.2d 19; Gillespie v. Gillespie, (Civ. App.) 343 S.W.2d 281.

The principle question presented here, as in all cases of this kind, is whether the trial judge abused his discretion in awarding custody of the children to the natural father, rather than to the natural mother. In Taylor v. Taylor, (Civ.App.) 42 S.W.2d 455, 456, Justice Alexander, later Chief Justice of the Supreme Court, said:

"Ordinarily where the custody of minor children is involved, the best interest of the children is the paramount issue. (citing cases) The presumption is that the best interest of the children will be subserved by awarding them to the natural parent, but this is a rebuttable presumption, and it is not necessary that the respondents prove that the natural parent is disqualified by immorality or misfortune. (citing cases) The question as to which of the two homes will best promote the interest of the minors is a

question of fact. The authority and discretion to weigh the testimony and to determine where the best interest of the minors will be subserved is vested in the trial court, and the appellate court should not disturb the judgment of the trial court unless it is so contrary to the great preponderance of the testimony as to reveal an abuse of that discretion." (citing cases)

Our Supreme Court in Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, reiterated this rule and held that abuse of discretion in an award of custody is a question of law requiring an apprisal of the facts.

The record reveals that on July 16th, 1959 the Circuit Court of Rock Island County, Illinois granted a divorce to appellee, Robert G. Hoskins from appellant Beverly Bell, such decree awarded custody of Robert Gregory Hoskins, then 23 months of age, and Ronald Lee Hoskins, then 9 months of age, to the father Robert G. Hoskins. In that action the mother agreed that the father Robert G. Hoskins should have custody of the children. Following the divorce Robert G. Hoskins kept the two minor children in his home in East Moline, Illinois, but failing in his efforts to find a housekeeper to take care of the children he brought them to Dallas, Texas on August 28th, 1959 and placed them in the temporary care of his brother Charles H. Hoskins, Jr., and wife Betty Hoskins. Robert G. Hoskins attempted to obtain employment in Dallas but failed to find a job which compared with his position in Moline, Illinois. He returned to Illinois to work but maintained a frequent contact with his children through visits, telephone conversations and correspondence. On November 4th, 1960 Robert G. Hoskins married his present wife, Rose Marie and attempted to return his children to his home in East Moline, Illinois, but was prevented from doing so because of the institution of this action.

Beverly Bell departed East Moline, Illinois and traveled about through several States, selling advertising and finally locating in South Texas where she has since resided. Since leaving East Moline, Illinois and until the trial of this case appellant has never seen or visited her two sons. According to her testimony she never requested to visit the children during that period of approximately 21 months. She attempted to justify her failure to see her children by several explanations, none of which impressed the trial court nor do they impress us. Both Charles and Betty Hoskins testified that the mother would have been permitted to visit the children if she had attempted to do so. According to Betty Hoskins the younger child had no recollection of his mother and the older child never mentioned her. Since she moved to Texas, Beverly Bell obtained a job in South Texas where she met and married B. T. Bell on March 7th, 1960. They own their home in Edcouch, Texas, and have an income from $10,000 to $13,000 per year. She testified she is able and prepared to quit her job and devote all of her time to the children; that she and her present husband are unable to have children of their own.

Robert Hoskins rents his home in East Moline, Illinois where he lives with his present wife. His income is approximately $10,500 and he and his present wife were expecting a child at the time of the trial. No question as to the moral qualifications of Beverly Bell or of Robert Hoskins was raised by the testimony.

In this state of the record two questions were presented to the trial court: First, did Beverly Bell meet her burden of proof by showing sufficient change of conditions occurring subsequent to the rendition of the divorce decree in Illinois? And secondly, from the standpoint of the best interest of the children should their custody be changed? The only grounds alleged by Beverly Bell to constitute a change of condition was the fact that she had now settled down, remarried, had a comfortable home, and wanted her children. The trial court had the testimony of numerous wit-

nesses for both parties. On the issue of the best interest of the children the testimony of Mrs. E. C. Summerfield is significant. Mrs. Summerfield, Supervisor of case work for the Dallas Aged and Dependent Children of the State Welfare Department, testified that she was in charge of the nursery at the Ridgecrest Baptist Church where she had taken care of the two minor children in the nursery for several hours almost every Sunday morning and Sunday night and Wednesday night since they had been brought to Dallas. Based upon her special knowledge and experience in child and welfare work, and her familiarity with the Hoskins children and their background, Mrs. Summerfield said that it was her opinion that the children would undergo a terrific adjustment if placed permanently in the home of Beverly Bell and her present husband.

██ The trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and since he had the opportunity to observe the parties and witnesses and weigh their respective qualifications he is in a better position to determine what would be to the best interest of the children than can be ascertained by reading the record, consequently an award of custody will not be disturbed on appeal unless we can say, in the light of the evidence, that the trial court closed his eyes to the welfare and best interest of the children involved. Gillespie v. Gillespie, supra; Wooster v. Thompson, (Civ.App.) 285 S.W.2d 954.

██ The burden of proof, of course, is upon the mother to demonstrate the material changes as required, in the interest of the children, that their custody be changed. Short v. Short, Tex., 354 S.W.2d 933; 20 Tex.Jur.2d 691, § 370.

██ We must ever bear in mind that it is not the welfare and desires of the parents that is paramount in determining the question of what would be the best interest of the minor children here involved.

The question is whether the facts presented by the mother demonstrate such a change of condition that would demand, *in the best interest of the children themselves*, that they be uprooted from their present condition and given to the care of the mother.

██ In the light of the undisputed testimony presented in this record, and applying well-settled principles of law announced above, and especially those enumerated by our Supreme Court in Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, and in the recent case of Short v. Short, Tex., 354 S.W.2d 933, we are of the opinion that the appellant Beverly Bell has failed to establish her burden of proof by demonstrating such a change of condition subsequent to the Illinois divorce decree as would justify the change of custody of the minor children. Neither can we say that the trial judge abused his discretion in refusing to change the custody. There is an abundance of testimony to support the trial court's action. Appellants' points one and two are overruled.

██ By appellants' third point, appellant, Beverly Bell seeks reversal of the trial court's judgment because of the court's action in excluding testimony of Beverly Bell as to her reason for her failure to visit the children, on the grounds that such testimony related to the matter before the divorce in Illinois. This point must be overruled for several reasons. In the first place the record fails to show what the testimony of Beverly Bell would have been, if admitted. An examination of the Statement of Facts, which bears the approval of appellants' counsel, reveals that when the question was propounded to Beverly Bell concerning the incident inquired about that the court sustained the objection thereto. Appellant, Beverly Bell, in her brief recites her answer, but the same is neither in the Statement of Facts nor in a separate Bill of Exceptions. Secondly, assuming the correctness of the recited portion of Bever-

ly Bell's testimony to be true as set forth in her brief, we feel that the same would have been inadmissible in that it dealt with acts and conducts prior to the Illinois divorce and would have therefore been incompetent. Wilson v. Elliott, 96 Tex. 472, 73 S.W. 946; Green et al. v. White, Tex. Civ.App., 203 S.W.2d 960; Olds v. Burton, (Civ.App.) 181 S.W.2d 118; and Chapman v. Harris, (Civ.App.) 231 S.W.2d 549; 20 Tex.Jur.2d 691. Furthermore, assuming the testimony offered to be true we are of the opinion that its rejection by the trial court, if it constituted error, was harmless error. Rule 434, Texas Rules of Civil Procedure; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277.

The judgment of the trial court is affirmed.